UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID C. DODWELL,

                                                    Plaintiff,

    v.                                                                    5:10-CV-378
                                                                            (NPM/ATB)
MICHAEL J. ASTRUE,
Commissioner of Social Security,

                                                  Defendant.
_____

CHRISTOPHER CADIN, ESQ., for Plaintiff
MARIA P. FRAGASSI SANTANGELO, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Neal P. McCurn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

Plaintiff filed[1] an application for disability insurance benefits and Supplemental Security Income (SSI) on January 11, 2007, claiming disability since January 20, 2006. (Administrative Transcript ("T.") at 110–12). Plaintiff's applications were

---

[1] In his decision, the Administrative Law Judge (ALJ) stated that plaintiff "protectively filed" his application on January 11, 2007. (T. 15). When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. § 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date.

denied initially on March 21, 2007. (T. 68–72), and he requested a hearing before an ALJ. (T. 73). The hearing, at which plaintiff testified, was conducted on July 28, 2009. (T. 30–66).

In a decision dated September 1, 2009, the ALJ found that plaintiff was not disabled. (T. 22–29). The ALJ issued an amended decision dated September 14, 2009, to incorporate his evaluation of an additional assessment by a treating physician, but determined that he would not change the original decision. (T. 15–18). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on February 4, 2010. (T. 1–4).

## II. ISSUES IN CONTENTION

The plaintiff makes the following claims:

1. The ALJ failed to properly evaluate the medical evidence. (Pl.'s Mem. at 10–18).

2. The calculation of plaintiff's Residual Functional Capacity (RFC) is inaccurate and based upon legal error. (Pl.'s Mem. at 18–20).

3. The ALJ's assessment of plaintiff's credibility is inaccurate and based upon legal error. (Pl.'s Mem. at 20–23).

This court concludes for the reasons below that the ALJ properly evaluated the medical evidence, properly calculated plaintiff's RFC, and accurately assessed plaintiff's credibility.

## III. APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or

SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 404.1520 and in 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920.  The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v.*

*NLRB*, 197 U.S. 229 (1938)); *Williams*, 859 F.2d at 258.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id.*  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## IV. MEDICAL EVIDENCE

Plaintiff's medical evidence begins with an emergency room report, describing an injury to his leg and ankle after a log fell on him at work in January 2006. (T. 194–206). X-rays of plaintiff's lower leg and ankle showed no evidence of fracture, and the doctor diagnosed a "contusion, abrasion to the lower leg." (T. 200).

On June 21, 2006, plaintiff saw an orthopedic surgeon, Dr. James Pemberton, who found no evidence of a fracture in plaintiff's ankle or leg, but concluded that plaintiff had some causalgia[2] from his leg injury, and attempted to try and address the pain by treating the swelling with an Unna boot. (T. 257). One week later, on June 28, 2006, Dr. Pemberton noted that plaintiff had removed the boot because it was uncomfortable. (T. 258). Dr. Pemberton indicated that plaintiff "has a lot of complaints, none of which can be backed up with any physical evidence." (T. 258).

---

[2] A burning pain, often with trophic skin changes, due to peripheral nerve injury. *Dorland's Medical Dictionary, Shorter Edition* 128, (Abridged from the 25th Edition of *Dorland's Illustrated Medical Dictionary*, 1980).

5

After more visits, Dr. Pemberton concluded on October 30, 2006, that the contusion on plaintiff's left leg caused by the log accident had healed, but that plaintiff still had "symptoms compounded by whatever medical problems [plaintiff] has developed in the last month or two." (T. 262).

Plaintiff saw Doctor James Hyla, a rheumatologist, for evaluation of arthritic symptoms, from 2006 through 2007, but not again until 2009. (T. 207–08, 264–66, 355–60). In 2006, Dr. Hyla ruled out inflammatory myopathy and noted that there was no sign of inflammatory arthritis. (T. 208). In May 2007, Dr. Hyla stated that plaintiff was finding relief from his back pain with a TENS[3] unit, and was still able to do some activities, such as woodworking, albeit very slowly. (T. 264). Also in May 2007, Dr. Hyla indicated that he "[did] not have a definite explanation" for plaintiff's complaints. (T. 265). In September 2007, Dr. Hyla stated that the "biggest issue right now continues to be the non-specific myalgias," and that the "key is still to try and improve the sleep pattern." (T. 266). When plaintiff returned to Dr. Hyla on August 26, 2009, Dr. Hyla diagnosed plaintiff with fibromyalgia. (T. 355).[4]

In 2007, plaintiff was evaluated by Dr. Kalyani Ganesh, an internist, who found

---

[3] Transcutaneous Electrical Nerve Stimulation.

[4] Plaintiff had previously told emergency room physicians that he had fibromyalgia in June 2008, when he visited the emergency room complaining of shaking, nausea, and tunnel vision, and the doctors included fibromyalgia in plaintiff's past medical history. (T. 268). Dr. Sophia Kasapira concluded that plaintiff's "very atypical chest pain" was "likely secondary to his fibromyalgia/arthritis." (T. 269). In her treatment notes, dated January 31, 2008, July 15, 2008, and November 25, 2008, P.A. Downing discussed the *possibility* of fibromyalgia or inflammatory arthritis. (T. 297, 302, 305). While this supports plaintiff's claim that his physicians were considering fibromyalgia as a diagnosis, it does not change the different physicians' assessments of his limitations before he was officially diagnosed with fibromyalgia by Dr. Hyla in August 2009.

6

"no limitation to sitting, standing, and the use of upper extremities" and "minimal to mild limitation walking and climbing." (T. 212). Dr. Ganesh diagnosed hypertension, diabetes, history of left ankle injury and left ankle pain, and history of arthritis multiple joints. (T. 212).

Plaintiff also had a sleep study done by Dr. Manoj J. Kumar in 2007, who found that plaintiff did not have sleep apnea, but did have an elevated number of leg movements per hour. (T. 227, 225). Dr. Manoj concluded that he did not need to see plaintiff again for further study, but left the ultimate decision up to plaintiff's primary care physician. (T. 225).

Plaintiff saw Dr. Hawkins and PA Downing through 2009, who monitored plaintiff's medications and complaints. (T. 292–34). Plaintiff spent a night in the hospital in 2008 after complaining of chest pain, but no evidence of an acute myocardial infarction was found. (T. 275). Plaintiff was seen again in the emergency department in December 2008; he had been vomiting and was feeling "weird all over." (T. 290). Plaintiff was diagnosed with acute dehydration and gastritis, and was stable when he was discharged. (T. 290).

**V.    TESTIMONY and NON-MEDICAL EVIDENCE**

Born on May 9, 1968, plaintiff was 41 years old at the time of the ALJ's hearing. (T. 40). He testified that his formal education ended after eighth grade, and he later joined the army. (T. 40). Plaintiff testified that he served three years on active duty as a motorman and an infantryman, and after his honorable discharge in 1990, he served with the National Guard until 1993. (T. 41, 45). Plaintiff's prior

7

work consisted of various construction and hard labor jobs. (T. 121, 178–181).

Plaintiff testified that his most recent job was at the lumberyard where the log fell on his leg and ankle in January 2006. (T. 42, 46). He also testified that after the accident, his health went "downhill basically." (T. 43). Plaintiff stated that he now has constant pain in his lower back "every time I bend, or move, twist wrong . . . I'm in severe pain." (T. 49). Plaintiff testified that due to the pain, he has difficulty sitting, lifting and carrying things, bending, squatting, kneeling, and reaching over his head. (T. 54–56).

Plaintiff also testified that he has high blood pressure, diabetes, and hypothyroidism. (T. 50, 52). Plaintiff explained that even with the three different medications he takes for his high blood pressure, it still spikes when he takes short walks. (T. 50). Plaintiff testified that his diabetes and hypothyroidism are well-controlled. (T. 52). Plaintiff also testified that he has asthma, and that it "sometimes" affects him, mostly when he gets sick, but he carries an inhaler for his symptoms. (T. 65). Plaintiff testified that although he still smokes, he is smoking "less than a pack a day now down from three [packs a day]." (T. 65).

## VI.   ALJ'S DECISION

In the ALJ's September 1, 2009 decision, he acknowledged that plaintiff met the insured status requirements of the Social Security Act through December 31, 2010, and has not been engaged in substantial gainful activity since the alleged onset date of January 20, 2006. (T. 24). The ALJ then determined that plaintiff suffers from degenerative disc disease, obesity, and asthma, all of which he considered "severe"

impairments under the regulations. (T. 24). The ALJ determined that the severity of plaintiff's impairments did not rise to the level of listed impairments. (T. 25). He determined that plaintiff retained the residual functional capacity for light work. (T. 26). Although the ALJ acknowledged that plaintiff's physical impairments were the source of problems for plaintiff, the ALJ found that plaintiff's statements regarding the intensity, persistence, and limiting affects of those symptoms were not credible to the extent that they were inconsistent with an ability to do light work. (T. 26). The ALJ found little evidence of plaintiff's asthma in the record, or of asthma-related problems that required treatment. (T. 27). The ALJ found that plaintiff, therefore, had the residual functional capacity for substantially the full range of light work. (T. 29). Considering his age, education, and prior work experience, the ALJ concluded that plaintiff was not disabled under the Act.[5] (T. 29).

 The ALJ issued an amended decision on September 14, 2009, in order to consider a report by Dr. Hyla, dated August 26, 2009, submitted by plaintiff's counsel. The ALJ considered whether Dr. Hyla's August 26, 2009 assessment, diagnosing fibromyalgia, warranted vacating the September 1, 2009 decision. (T. 15). The ALJ determined that plaintiff's fibromyalgia did not rise to the level of a severe impairment, and that even if it were found to be severe, it would not affect plaintiff's ability to perform light work as determined in the September 1, 2009 decision. (T. 16, 18). Therefore, the ALJ again concluded that plaintiff was not disabled under the Act. (T. 18).

---

[5] The ALJ utilized the Medical-Vocational Guidelines (The Grid) in making his determination. 20 C.F.R. Part 404, Subpt. P, App. 2, § 202.17.

## VII.   ANALYSIS

### 1.   Residual Functional Capacity/Treating Physician

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *See Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)).  RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations.  *Id.*  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Trail v. Astrue*, 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7).

While a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and *not inconsistent with other substantial evidence*.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d).  If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is *not* required to give

the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must, however, properly analyze the reasons that the report is rejected. *Id.* An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

In this case, the ALJ found that plaintiff had the physical capability to perform "light work." (T. 26). Light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). When the weight lifted is "very little," a job is still in the light work category when it requires "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* The regulations also state that in order for an individual to be considered capable of performing a "full or wide range" of light work, she must "have the ability to do substantially all of these activities." *Id.* Finally, if the individual can perform light work, there is a presumption that he or she can do sedentary work, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. *Id.*

The ALJ gave Dr. Ganesh's February 21, 2007 consultative report great weight because it was consistent with the overall medical record. (T. 28). Dr. Ganesh noted that plaintiff could cook and clean a couple times a week, could shower four days a week, and could dress himself daily. (T. 210). Dr. Ganesh observed that plaintiff had a mild limp favoring the left, but that he could walk on his heals and toes without difficulty, squat fully, had a normal stance, did not use assistive devices, needed no

help changing for the exam, getting on or off the exam table, and could rise from his chair without difficulty. (T. 210). Dr. Ganesh further observed that plaintiff exhibited full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally in both his cervical and lumbar spine. (T. 211). No scoliosis, kyphosis, or abnormality was noted in plaintiff's thoracic spine, and plaintiff had a full range of motion in his shoulders, elbows, forearms, wrists, hips, knees, and ankles. (T. 211). Plaintiff had full strength in his upper and lower extremities, and stable joints. (T. 211). Dr. Ganesh noted tenderness in plaintiff's lumbar spine, but no redness, heat, swelling, or effusion. (T. 211). Dr. Ganesh concluded that plaintiff had no limitation in sitting, standing, and the use of upper extremities, and had only minimal to mild limitations walking and climbing. (T. 212).

Though the "disability examiner" was not an acceptable medical source, the ALJ also considered his or her opinion, because it was somewhat consistent with the record. (T. 28). The examiner found plaintiff could perform medium exertional level work. (T. 219).

The ALJ also relied upon the July 27, 2009 physical evaluation report of plaintiff's treating physician, Dr. Charlotte Hawkins, to determine that plaintiff could perform light work. (T. 353–54). The ALJ gave Dr. Hawkins' opinion great weight, but not controlling weight, because Dr. Hawkins is not a specialist. (T. 28). Dr. Hawkins stated that plaintiff could sit for two hours at a time, stand or walk 30 to 60 minutes at a time, lift, carry, push, and pull fifteen to twenty pounds, but could not crawl, and was "limited" climbing ladders and reaching overhead. (T. 353–54). Dr.

Hawkins also indicated that plaintiff had unlimited use of his hands, but that exposure to dust, fumes, or gases should be limited because of plaintiffs' asthma. (T. 353–54). The ALJ granted plaintiff the "benefit of doubt" that he suffers from asthma, because there was limited evidence of asthma. The ALJ also noted that Dr. Hawkins' assessment did not rule out work in general. (T. 28).

The ALJ stated that he gave little weight to the opinion of Margaret Downing, Dr. Hawkins' physician assistant (PA), who indicated in July and August of 2008 that plaintiff could be re-introduced to light duty work every other day, but then concluded in October 2008 that plaintiff was totally and permanently disabled and not expected to become employable. (T. 351–52). The ALJ gave PA Downing's opinion little weight because of its inconsistency with the doctor's opinion or the objective medical evidence and clinical findings.[6] (T. 28).

Plaintiff argues that the ALJ erred by failing to take into account Dr. Hyla's August 26, 2009 diagnosis of fibromyalgia. The ALJ gave limited weight to Dr. Hyla's August 26, 2009 Fibromyalgia Questionnaire, because it was prepared after meeting with plaintiff for the first time in two years, and Dr. Hyla only saw plaintiff for the purpose of filling out the questionnaire. (T. 18; *see* T. 357). Dr. Hyla indicated that plaintiff could sit from one to two hours only, plaintiff could stand/walk a maximum of one hour, plaintiff could bend, but infrequently, use his hands for

---

[6] Although the ALJ did not mention it as a reason, the court notes that a physician's assistant is not an acceptable medical source according to the Social Security Regulations, and need not be given controlling weight. *See* 20 C.F.R. §§ 404.1513(d) (physicians' assistants are listed as "other sources," not included as "acceptable medical sources who can provide evidence to establish an impairment); 416.913(d).

fine/gross manipulation, plaintiff could not perform at a fast pace or sustain work activity over a regular eight-hour work day. (T. 356).

In addition, Dr. Hyla makes no indication that he consulted any records or tests in making his evaluation, and the questionnaire is limited in that it fails to specify how many of the stated periods of time that plaintiff could sit, stand or walk in a work day, and fails to indicate what type of work plaintiff would be precluded from performing in an eight-hour work day. (T. 18; *see* T. 356).

The Second Circuit has stated that although the court will not accept an "'unreasoned rejection of all the medical evidence in a claimant's favor,' the Commissioner need not 'reconcile explicitly every conflicting shred of medical testimony.'" *Galiotti v. Astrue*, 266 Fed. Appx. 66, 67 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). When as in this case, there are conflicts in the medical evidence, it is the fact-finder's decision that controls. *Id.* Where the Commissioner's decision "rests on adequate finding supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner." *Id.* (citing *Veino v. Barnhart*, 312 F.3d 578, 586 (2d. Cir. 2002)).

Dr. Ganesh's evaluation of plaintiff in 2007 and Dr. Hawkins' evaluation of plaintiff in 2009 were strikingly similar, and Dr. Hawkins has been treating plaintiff consistently since at least June 2006. (T. 28, 353–54; *see* T. 229–43, 292–344). The ALJ stated that he gave Dr. Ganesh's report great weight because it was consistent with the overall medical record, and the ALJ gave Dr. Hawkins great weight because of her consistent treatment of the plaintiff. The ALJ also considered and gave

appropriate weight to other relevant medical evidence, including Dr. Hyla's diagnosis of fibromyalgia. Thus, the ALJ's reasons for determining that plaintiff can perform the physical requirements for light work are supported by substantial evidence. (*See* T. 18).

### 2. Pain and Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 404.1529(a), (b). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c). When the objective evidence alone does not substantiate the

intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3).

While plaintiff complained of pain, "disability" requires more than the inability to work without pain. *See Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). To be disabling, pain must be so severe as to preclude any substantial gainful activity. *See* 42 U.S.C. § 423 (d)(1), (d)(5)(A). The ALJ was not obligated to accept plaintiff's testimony about his subjective symptoms and restrictions without question, and has the discretion to evaluate credibility in light of the evidence in the record. *See, e.g., Aponte v. Secretary, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (it is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant). A court must uphold the Commissioner's decision to discount a claimant's complaints of pain and other subjective complaints if the finding is supported by substantial evidence. *Id.*; 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive."). As the ALJ found, the totality of the medical and other evidence does not corroborate plaintiff's claims regarding the extent of his pain and physical limitations.

The ALJ did not conclude that plaintiff was completely incredible; rather, the ALJ concluded that the "objective medical evidence does not support the severity alleged." (T. 27). He noted that plaintiff has only undergone conservative treatment for back pain, and surgery has not been recommended as a treatment for any of plaintiff's problems. (T. 27). The ALJ also relied on the tests that, while showing degenerative disc disease, were all negative for an inflammatory process. (T. 27). In addition, Dr. Hawkins' July 2009 report of plaintiff's physical capabilities also exceeds plaintiff's testimony of his abilities. (*See* T. 353–54).

In his Amended Decision dated September 14, 2009, the ALJ notes, "Of great interest is that Dr. Hyla's [August 26, 2009] assessment of the claimant's abilities far exceeds those given by the claimant in his testimony at the hearing where he measured his ability to sit/stand/walk in minutes not hours." (T. 26). Plaintiff testified that his lower back pain was "constant . . . every time I bend, or move, twist wrong, I'm in severe pain." (T. 49). Plaintiff also testified that he "has issues" that require him to move around after he sits for longer than 15 minutes, and he "has issues" that require him to stop when he walks for longer than 15 to 30 minutes. (T. 54–55). Dr. Hyla's August 26, 2009 report, however, indicated that plaintiff could sit from one to two hours and stand/walk a maximum of one hour. (T. 356). This inconsistency is sufficient reason for the ALJ to reject plaintiff's testimony of his alleged limitations.

17

This court concludes that there is substantial evidence supporting the ALJ's determination that plaintiff's statements concerning the intensity, duration and limiting effects of his physical symptoms were not entirely credible.

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED**, and the complaint be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 6, 2011

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge